PLAS *v.* ALDRICH.

1. VENDOR AND PURCHASER—BILLS AND NOTES—PAYMENT.

Whether a note, given as part of the down payment in the purchase of land on contract, is to be regarded as having been accepted by the vendor as an absolute payment is to be determined by ascertaining, if possible, the understanding of the parties.

2. SAME—PRESUMPTIONS—ACCEPTANCE OF NOTE NOT PRESUMED TO RELEASE SECURITY.

Unless there is evidence of a clear understanding to the contrary, the law will presume that by accepting a note for the down payment the vendor did not intend to release his security to the extent of the debt which the note represents.

3. SAME—RIGHT TO RESCIND FOR NONPAYMENT—TIME OF ESSENCE OF CONTRACT.

In view of a provision in a land contract that, on failure of the vendee to make any of the stipulated payments, the vendor might immediately declare it void, time will be considered as of the essence of the contract.

4. SAME—RESCISSION—NOTICE SUFFICIENT.

Where, after the vendee had failed to pay the note, and had returned the abstract, the vendor wrote him "that we would cancel the contract and call the deal off, and call it null and void," the letter, although insufficient as a notice of forfeiture, was a sufficient notice of rescission, because it evidenced the vendor's intention to terminate the contract, which is all that was necessary.

5. SAME—RESCISSION EFFECTIVE.

Where the vendor, on failure of the vendee to pay a note, notified him of his intention to cancel the contract, and immediately resumed possession of the property, paid the taxes, and in every way treated it as though he were the only party in interest, the rescission was effective.

[1]Payment, 30 Cyc. p. 1194; [2]Id., 30 Cyc. p. 1192; 35 L. R. A. (N. S.) 91; 21 R. C. L. 70, 75; 3 R. C. L. Supp. 1134; 4 R. C. L. Supp. 1403; 5 R. C. L. Supp. 1142; 6 R. C. L. Supp. 1253; [3]Vendor and Purchaser, 39 Cyc. p. 1605; [4]Id., 39 Cyc. pp. 1386, 1606 (Anno); [5]Id., 39 Cyc. p. 1388.

6. SAME—VENDOR ON RESCINDING MUST RETURN WHAT HE RE-
CEIVED.
   A vendor may not rescind a contract without restoring
   whatever of value he may have received from the vendee.

7. SAME—NOT REQUIRED TO RETURN WORTHLESS NOTE.
   A vendor, who elected to rescind a contract because of
   the nonpayment of a note given by the vendee, no longer
   owned the note and should have returned it, but failure
   to return it did not prevent the rescission from becoming
   effective, where it had no value, and therefore its return
   was not essential to a rescission.

8. APPEAL AND ERROR—QUESTION FIRST RAISED IN SUPREME COURT.
   A question raised for the first time in the Supreme Court
   will not be considered by it.

Cross-appeals from Wayne; Mandell (Henry A.), J.
Submitted January 25, 1927.    (Docket No. 116.)
Decided April 1, 1927.

Bill by Joseph Plas against Ralph L. Aldrich and
William T. Wulf to enjoin defendant Wulf from inter-
fering with the possession of certain land.    Defend-
ant Wulf filed a cross-bill to quiet title.    Defendant
Aldrich filed a cross-bill for specific performance of a
land contract.    From a decree for defendant Wulf,
plaintiff and defendant Aldrich appeal.    Affirmed.

*Anderson, Wilcox, Lacy & Lawson* (*Clarence E.
Wilcox* and *Ward H. Peck,* of counsel), for appellants.

*Campbell, Dewey, Stanton & Bushnell* (*Arthur F.
Neef,* of counsel), for defendant Wulf.

McDONALD, J.    The defendant Wulf is the owner
of four acres of land in Ecorse township, Wayne
county, Michigan.    Some time in March, 1921, he
sold it on land contract to one Harry Brower.    The
consideration was $7,500, of which $200 was paid

⁶Vendor and Purchaser, 39 Cyc. p. 1378; ⁷Id., 39 Cyc. pp. 1380,
1382; ⁸Appeal and Error, 3 C. J. § 580.

down in cash and $800 was to be paid on the delivery
of the abstract. The $800 was not paid and no other
payments were made except $37.50 interest which was
paid some time in the summer. After this the con-
tract seems to have been abandoned. On the 18th
of December, 1922, a new contract was entered into
between the same parties and one Rupersberg, a
business associate of Mr. Brower. The consideration
was $8,500. On this contract the down payment was
to be $700, on which the $200 paid on the former
contract was credited, and a 30-day note for $500
signed by Brower and Rupersberg was taken for the
balance. When the note became due it was not
paid. It has never been paid. Another pay-
ment of $500 was to be made on June 18, 1923,
and $500 each six months thereafter until the
balance of the purchase price was fully paid, with
interest at six per cent. payable annually. None
of these payments have been paid. On January 3,
1923, Brower and Rupersberg assigned the contract to
defendant Ralph L. Aldrich. On September 12, 1923,
Aldrich sold the property on land contract to the
plaintiff Plas, together with 12 acres adjoining, which
Aldrich held as vendee in a land contract with one
Quandt. The defendant, who claims to have re-
scinded the contract in February, 1923, has paid all
of the taxes and has been in possession of the prop-
erty since that time. He has received no payments
from any of the various vendees. The plaintiff claims
possession and filed this bill to enjoin Wulf from in-
terfering with it. Wulf filed an answer and cross-
bill in which he asked for a decree quieting his title.
The defendant Aldrich filed a cross-bill praying for
specific performance of the Wulf contract. On the
hearing the circuit judge entered a decree for de-
fendant Wulf. The plaintiff and the defendant
Aldrich have appealed.

The important question presented by the record relates to the alleged rescission of the contract. The defendant Wulf contends that when the $500 note became due and was not paid, Brower and Rupersberg were in default, and that, under the stipulation of the contract, he had a right to rescind it for that reason; that he did rescind it and resumed possession of the property, which possession he has retained ever since. The plaintiff insists that he did not rescind it, that no grounds for rescission existed, because no payments were due at that time, and that therefore there was no default.

There was $500 due on the contract at the time when Mr. Wulf claims to have rescinded it, unless the note, which was not paid, is to be regarded as having been accepted as an absolute payment. And that question is to be determined by ascertaining, if possible, the understanding of the parties. It is not claimed that there was any specific agreement in regard to it. The language of the contract in reciting the payments makes no reference to the note. It contains no acknowledgment by the vendor of the receipt of the down payment. It says that $700 is to be paid on the execution and delivery of the contract, but omits the usual language, "the receipt of which is hereby acknowledged." In the absence of any evidence from the contract or elsewhere of an express understanding, the question is controlled by the legal presumption that it was not accepted as an absolute payment. Unless there is evidence of a clear understanding to the contrary, the law will presume that by accepting the note the vendor did not intend to release his security to the extent of the debt which the note represents:

"If there is an express agreement by the creditor to receive a note as absolute payment and to run the risk of its being paid, it will be held to be an extinguishment or payment of the precedent debt, whether the

note is afterwards paid or not, but a clear agreement or manifestation of intention of both parties to that effect is essential." 21 R. C. L. p. 72, § 72.

See, also, *Swan* v. *Gregory,* 195 Mich. 457.

"Where the extinguishment of a debt has the effect to strike down a lien or a title securing its payment, the presumption that it is not discharged by the acceptance of the note of the debtor in payment of it is strengthened, because in such a case the discharge of a lien is more unusual and unreasonable; and the general rule is that the receiving of a promissory note by a creditor will not have the effect to discharge a lien, statutory or contractual, which the creditor has for the security of his debt. Applying this rule, it is held that a vendor's lien on land is not extinguished by taking the purchaser's note for the purchase money." 21 R. C. L. p. 75, § 77.

We find no evidence sustaining the claim that the defendant Wulf accepted this note as an absolute payment. The effect of taking the note was merely to extend the time for making the payment agreed upon. When that time expired the payment was not made. Brower and Rupersberg were in default for nonpayment. The contract provided that on failure of the vendees to make any of the stipulated payments the vendor might immediately declare it void. In view of this provision, it will be considered that time was of the essence of the contract. But Mr. Wulf did not immediately declare the contract void. He went to Mr. Brower's office and demanded payment of the note.

"I told him I wanted my money on that note. He said that he had no money; that the deal wasn't gone through yet, and they couldn't pay the note. And then he said 'come in Saturday and we will have some money.' I went back Saturday. He had no money. Saturday Mr. Rupersberg was with Mr. Brower. I told him if he couldn't pay it I would pull out. Mr. Brower says, 'well, if you pull out we can't have it.' Then I called for my abstract. He had the abstract

at that time.    I asked him for it.    He did not give it to me.    He said that he hadn't—that he didn't have it in the office.    He brought it back and gave it to my mother."

The mother testified that when Brower subsequently returned the abstract he remarked that he couldn't handle it.    A few days after the abstract was returned, Mr. Wulf says that he wrote Mr. Brower a letter in which he told him "that we would cancel the contract and call the deal off, and call it null and void."    Mr. Brower denies having received the letter, but the trial court found that he did receive it; and, in view of the unsatisfactory character of his testimony, we are not inclined to disturb this finding. This letter was not sufficient as a notice of forfeiture, but it was a sufficient notice of rescission.    It was not such a notice as an attorney would have written, but it shows the intention of the writer to terminate the contract, and that is all that was necessary.    It is evident that Wulf regarded it as a rescission for he immediately resumed possession of the property, paid the taxes and in every way treated it as though he were the only party in interest.

But counsel contend that Mr. Wulf could not rescind without first restoring to Brower and Rupersberg that which he received from them, viz., the $500 note.    Having elected to declare the contract void, as he had a right to do, he no longer owned the note and should have returned it.    But did failure to return it prevent the rescission from becoming effective? It will be conceded that if the vendees had given Wulf anything of value such as money or property, he could not rescind the contract without restoring to them that which he received.    This note was past due and unpaid and in the possession of the payee at the time of the attempted rescission.    Three years elapsed before the rescission was challenged.    The note is still unpaid.    It is worthless in the hands of

the vendor.  He could not bring suit on it because of his notice of rescission.  He could not pass it to a third party because it was due and the same defense would obtain against an attempt to enforce it. Whether in the hands of the vendor or the vendees, or of a third party, it had no value.  And if it had no value its return was not essential to a rescission of the contract.  In *American Trust & Savings Bank* v. *Moore,* 161 Mich. 436 (137 Am. St. Rep. 518), this court held that it was not essential to a rescission of a contract for the sale of an automobile to return a worthless certificate of deposit which had been given in payment of the purchase price.  It was there said:

"We all know that in such a case it is usually the duty of the vendor to tender back the note or property paid, as a condition to the right to recover his property.  Exceptions to this condition are when, as in this case, the paper is worthless in the hands of the vendee, and where the vendor is unable to tender back the paper."

If a vendor disaffirms a contract and sues to recover his property, he must first return that which he received from the vendee if it has any value.  If it is a worthless note a return or tender on the trial is sufficient.  *Pangborn* v. *Ruemenapp,* 74 Mich. 572.

And in *Skinner* v. *Michigan Hoop Co.,* 119 Mich. 467 (75 Am. St. Rep. 413), it was said:

"While we think that such surrender might be necessary, either at the time of rescission, or, at all events, upon the trial, in the case of negotiable paper of the defendant, not due, it would seem to be unnecessary where it was overdue, provided it should be made to appear that it was still held and owned by the payee, and not by a *bona fide* purchaser for value."

Under the circumstances in the instant case, we think that a return or a tender of the note was not indispensable to a rescission of the contract.

But it is further contended that the rescission did not become effective because Mr. Wulf had not paid the specific tax required by Act No. 91, Pub. Acts 1911 (1 Comp. Laws 1915, § 4268 *et seq*).    So far as the record shows this question is raised for the first time in this court.    The testimony shows that the tax was paid, but it is not clear who paid it.    The contract was introduced in evidence by counsel for appellant without objection, but nothing was said about the tax at that time.    Subsequently, when the contract between Aldrich and Plas was offered in evidence, it appeared that the tax on that contract had not been paid.    At the 'same time some reference was made to the Wulf contract.    The court inquired if the tax on that contract had been paid and was informed by appellants' counsel that it had.

"*The Court:* Has the tax been paid on that?
"*Mr. Lendzion:* Yes.    That is in evidence."

Mr. Wulf was examined at length, but was not asked about the payment of the tax, and we find nothing in the testimony showing that he did not pay it. . In any event, there is nothing in the record to show that the question was presented to the court below or was considered by him.    His opinion makes no reference to it and all the information we have on the subject is what we find in the briefs of counsel.    Under the circumstances, we must decline to consider it.    Our conclusion is that there was an effective rescission of the contract by Mr. Wulf in February, 1923.

This record presents rather an unusual situation. Parties are here in a court of equity asking for the specific performance of a land contract on which none of them has ever paid a dollar to the vendor.    For nearly three years they took no steps to obtain their rights under the contract, and neither paid nor tendered any payments on the principal or in-

terest.     If they thought that they had any rights, their long delay in asserting them, is entirely unexplained.     It does appear that during this period of delay the property greatly advanced in value, and we cannot escape the conclusion that their awakened interest was due to that fact.     In any view of the case, they are not entitled to specific performance of the contract.

We have discussed every question presented by the record which we think merits discussion.

The decree of the circuit court is affirmed, with costs to the defendant Wulf.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.