McBEE BINDER CO. *v.* FRED J. ROBINSON LUMBER CO.

1. CONTRACTS—EXECUTORY CONTRACTS—CANCELLATION.
   Mutual cancellation of an executory contract after partial performance without express reservation of claim for any unliquidated damages terminates contract so as to preclude recovery for any previous breach and burden is on party asserting reservation to show that this was the mutual understanding.

2. PRINCIPAL AND AGENT—RATIFICATION—CANCELLATION OF INSTRUMENTS.
   Act of home office in cancelling contract for office supplies and use of binding machine was ratification of offer of local agent that binding machine be returned after materials on hand were used up, and put an end to performance of the contract.

3. CONTRACTS—CANCELLATION OF INSTRUMENTS.
   Agreement by defendant, that in case its purchases of office supplies did not total a given amount in the course of a year plaintiff was to receive percentage of difference as rent for binding machine, was mutually canceled when machine was returned to factory without objection upon part of plaintiff who canceled written contract, thereby ending its performance and waiving all right to claim for damages for any breach.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted April 19, 1934. (Docket No. 34, Calendar No. 37,418.) Decided June 4, 1934.

Assumpsit by McBee Binder Company, an Ohio corporation, against Fred J. Robinson Lumber Company, a Michigan corporation, for sums allegedly due under a contract for office supplies and use of a binding machine. Judgment for plaintiff. Defendant appeals. Reversed, without a new trial.

*Anderson, Wilcox, Lacy & Lawson* (*Paul J. Kenny,* of counsel), for plaintiff.

*Yerkes, Goddard & McClintock,* for defendant.

BUSHNELL, J.  Plaintiff had judgment after trial without a jury for $464.30, representing unpaid rentals claimed due it for the use of a "binding machine" during 1930, 1931, and 1932.  This claim is based on a written agreement between the parties which provided in substance that if the purchases of binding covers, accessories and other office supplies and equipment by defendant did not aggregate the sum of $1,500 during any 12-month period, the plaintiff was to receive 15 per cent. of the amount by which the aggregate purchases fell short of the amount named.  This sum was to be applied as rent for the machine furnished defendant.  It is conceded that the amount of the judgment is correct, if there is any liability.

Three questions are raised by the briefs, but the decision can rest upon our determination of one of these issues.  The defendant admits that the agreement provided that it should purchase all of its office supplies from plaintiff, but it insists that on one occasion a large order given plaintiff had to be withdrawn because it could not be filled within a reasonable time, and that at other times orders were given on which delivery was so greatly delayed that the contract became impossible of performance.  Consequently, it claims the annual purchases never aggregated $1,500.  This situation led to a proposal on the part of plaintiff's Detroit manager that defendant use up the binders and other materials on hand and then return the machine.

The testimony shows the machine was returned to plaintiff's factory about February 1, 1932.  The contract, when introduced in evidence, bore upon its face an indorsement in red pencil, "cancelled 2-7-32. mch. retd."  Plaintiff's witness, its former Detroit agency manager, testified that this indorsement was

made in plaintiff's home office. The rentals claimed were then accrued.

We held in *Baker* v. *Lambers*, 261 Mich. 86, that the vendor relinquished his right to the amounts already accrued upon a land contract when he accepted the vendee's surrender of the premises, quoting *Goodspeed* v. *Dean*, 12 Mich. 352, as follows:

"He could not treat it as void in respect to the rights which it secured to the defendant, and valid in respect to those which it secured to himself. Having declared it void as to the land, it was void also as to the payments which it had bound the defendant to make for the land. There was nothing, therefore, upon which plaintiff could base a right of action for either the principal or the interest which had become due upon it."

The general rule is that:

"When an executory agreement partly performed is thus mutually canceled, if any right is reserved to recover unliquidated damages arising out of a previous breach thereof, it should be reserved expressly, and that the burden is upon one who alleges such a reservation to show that this was the mutual understanding. A mutual rescission, abrogation, release, or cancellation of such a contract, without reservations, terminates it so as to preclude the recovery of damages for any previous breach thereof." *Juniper Lumber Co.* v. *Nelson*, 133 Va. 146 (112 S. E. 564, 24 A. L. R. 247, and cases collected in 24 A. L. R. 253).

Plaintiff seemingly made no objection to the return of the machine and treated it as a cancellation of the agreement. Plaintiff denies the authority of its Detroit manager to authorize its return, yet the act of the home office was in complete harmony with that of its agent, and may be regarded as a ratifica-

tion of its agent's conduct. The plaintiff, by its own act, not only put an end to performance of the contract, but also waived all right to its claim for damages for any breach thereof. 3 Black on Rescission and Cancellation of Contracts, § 704. If plaintiff intended to reserve a claim for the balance due it at the time of cancellation, that reservation should have been expressly made. Silence on its part was not sufficient.

It is not necessary to consider the other questions raised.

The judgment is reversed, with costs and without a new trial.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.