DENLER & DENLER LAND CO. *v.* EBY.

1. VENDOR AND PURCHASER—ASSIGNMENTS.

Purchasers of vendees' interest in land contract should be bound by terms of the contract unless it is terminated by mutual agreement or understanding that it was canceled or rescinded, where after abandonment by such purchasers the vendor exercised no control over the property, consisting of a house and two lots.

2. APPEAL AND ERROR—RECORD—ISSUE OF FACT—SUPREME COURT.

Supreme Court will not overrule determination of an issue of fact unless record on appeal discloses justification for so doing.

3. VENDOR AND PURCHASER—ISSUE OF FACT—EXECUTORY CONTRACT —PARTIAL PERFORMANCE—CANCELLATION.

Record in vendor's action of assumpsit for balance due on a land contract *held*, not to disclose cause for disagreement with finding for defendants on issue of fact as to reassignment of the executory contract by them and its mutual cancellation after partial performance.

4. CONTRACTS—EXECUTORY—CANCELLATION—PARTIAL PERFORMANCE.

An executory contract may be canceled by mutual consent notwithstanding partial performance.

5. VENDOR AND PURCHASER—ESTOPPEL—CANCELLATION.

Rule that doctrine of estoppel cannot be applied for purpose of conveying real estate *held*, inapplicable in vendor's action of assumpsit for balance due on land contract where defendant purchasers of vendees' interest claimed vendor was estopped by its conduct from disavowing cancellation of the contract.

6. ESTOPPEL—FRAUDS, STATUTE OF.

Although, under statute of frauds (3 Comp. Laws 1929, § 13411) interest in land cannot be created or granted except in writing, owner may, by reason of his own conduct in asserting title in another, be estopped from proving his own title.

7. SAME—LAND CONTRACTS—ACQUIESCENCE IN CANCELLATION BY
    VENDOR.

Estoppel of vendor from recovering balance due from purchasers
of vendees' interest under land contract *held*, established by
vendor's acquiescence for upwards of a year in surrender of
defendants' contract rights, during which time property dam-
age and loss resulted from vendor's inaction.

Appeal from Oakland; Doty (Frank L.), J.   Sub-
mitted August 6, 1936.   (Docket No. 121, Calendar
No. 38,473.)   Decided October 5, 1936.

Assumpsit by Denler & Denler Land Company, a
Michigan corporation, against Francis B. Eby and
wife for balance due on land contract.   From judg-
ment for defendants, plaintiff appeals.   Affirmed.

*P. G. Horler,* for plaintiff.

*Cole & Cole,* for defendants.

NORTH, C. J.   Plaintiff brought suit in assumpsit
for money claimed to be due it from defendants on a
land contract.   The circuit judge, who heard the
case without a jury, found against plaintiff and it
has appealed.

Plaintiff is a Michigan corporation which in effect
is owned and controlled by plaintiff's witness, Wil-
liam J. Denler, and his brother.   It is the vendor
in a land contract covering a house and two lots, the
property being in Royal Oak township, Oakland
county.   The contract vendees' interest was as-
signed to defendants August 11, 1928.   Defendants
admit that they thereupon became liable to plaintiff
for the contract purchase price.   They made numer-
ous payments to and including September 16, 1931,
at which time the unpaid balance of the purchase
price was $2,131.05.   Defendants were then in de-

fault and no further payments were made. They received a letter from plaintiff's attorney shortly prior to August 4, 1932, in which suit was threatened unless defendants made some arrangement as to payments then in arrears. Thereupon an interview with the attorney was had by Mr. Eby, concerning which he testified:

"I went down and explained the financial situation I had gotten into on account of the times. Had lost my properties that I had practically paid for and given them back and had come to the point where I had to give this one back. It was impossible for me to pay any longer, so I told him I would return it. He wanted to know if that was the best I could do. I went into it thoroughly and it was the best I could do. There wasn't anything else to do. So in a week or two I returned it and that was the last I heard of it for a long, long while until the suit was started."

On August 4, 1932, according to defendants' claim, Mr. Eby mailed the attorney a letter of which a carbon copy was received in evidence. It follows:

"I finally got the tenant out of this home by moving him up to Bay City near his mother's home. I told you when I last saw you I would decorate this home on the inside before turning it back, which is all I can possibly do. It has gotten to a point that I must begin all over again, and it is going to be hard for a man of my age. I believe I could have this home decorated within ten days or two weeks."

Defendants also claim Mr. Eby wrote and mailed a letter to plaintiff on August 18, 1932. Its receipt was denied by plaintiff. The carbon copy received in evidence reads:

"I have been in to see your attorney, Mr. Phelps, and went over the whole matter of our affairs very

thoroughly with him. My affairs had come to a point that I simply must return my contract to you and take my loss. Therefore, I had (hand) you in this, my contract, properly indorsed by Mrs. Eby and myself and will consider the matter closed.'"

Mr. Eby testified his letter did not come back to him in the mail. Nothing more passed between the parties until this suit was instituted a year later. Defendants seem to have wholly abandoned the property. On the other hand the secretary of the plaintiff corporation testified:

"No authority or control over the property has been exercised on behalf of the plaintiff other than that of the vendor on the contract."

As we view the record defendants should be bound by the terms of the contract unless, as they claim, it was terminated by mutual agreement or understanding that it was canceled or rescinded. The circuit judge who saw and heard the witnesses rendered an opinion in which he said:

"The testimony of the defendant is that he had a consultation with the attorneys representing the plaintiff as to the surrender of the contract and introduced copies of two letters, the originals not having been produced by plaintiff, directed to the plaintiff in the case, which convinces the court, together with the testimony, that he returned the contract in question to the plaintiff company with a proper assignment from himself and wife in writing attached to the contract, re-assigning the contract to the plaintiff. I am satisfied, while this is disputed on the part of the plaintiff, this contract was received by some member of the plaintiff's firm and having been received and accepted and over a year elapsing between that time and the starting of this suit, the plaintiffs are now estopped from bringing the action in question."

The estoppel which the court found is supported by testimony that during the year of plaintiff's apparent acquiescence in the surrender of the contract by defendants, the property being abandoned and without care, suffered serious damage and its utility for the interim was lost.

A more satisfactory record doubtless would have resulted if the testimony of the attorney Phelps had been secured because it was through him that it is claimed the plan for surrender and cancellation of the contract was first taken up. In the meantime he seems to have located in Rochester, New York, and neither party saw fit to produce him as a witness or procure his testimony. Unless a record on appeal discloses justification for this court's overruling the trial court's determination of an issue of fact, it should not be done. In the instant case William J. Denler was plaintiff's only witness, and Mr. Eby the sole witness for defendants. Each has a direct interest in the outcome of the case. Careful review of the record does not disclose cause for disagreeing with the circuit judge's determination of the fact issue.

There is ample precedent in this state to sustain defendants' contention that it is legally possible to have mutual cancellation of an executory contract, notwithstanding the same has been partially performed. *McBee Binder Co.* v. *Fred J. Robinson Lumber Co.*, 267 Mich. 637.

In appellant's brief the following is quoted and cited:

"It has long been held in this State that the doctrine of estoppel cannot be applied for the purpose of conveying real estate. *Hayes* v. *Livingston,* 34 Mich. 384, 388 (22 Am. Rep. 533) ; *Sprunger* v. *Ensley,* 211 Mich. 103."

The law of the cited cases is not applicable here. Defendants have not sought to convey or reconvey to plaintiff title to real estate. Instead the defense is that by its conduct plaintiff is estopped from disavowing cancellation of defendants' contract to purchase. *Colonial Theatrical Enterprises* v. *Sage,* 255 Mich. 160, is much to the point on this phase of the law. We quote from the syllabus:

"Although, under the statute of frauds (3 Comp. Laws 1929, § 13411) interest in land cannot be created or granted except in writing, owner may, by reason of his own conduct in asserting title in another, be estopped from proving his own title."

So under the circumstances of this case we think plaintiff's acquiescence for a long period in defendants' surrender of their contract rights, during which period property damage and loss resulted from plaintiff's inaction, should be held to constitute an estoppel as asserted by defendants.

Judgment entered in the circuit court is affirmed, with costs to appellees.

FEAD, WIEST, BUTZEL, BUSHNELL, SHARPE, and TOY, JJ., concurred. POTTER, J., did not sit.